The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Morgan. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
* * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as
STIPULATIONS
1. The parties entered into a pretrial agreement dated March 1, 1996, which is incorporated herein by reference.
2. At all times pertinent to this claim, the employer-employee relationship existed between plaintiff and defendant-employer; the employer regularly employed three or more employees, and the parties were bound by and subject to the provisions of the Workers' Compensation Act.
3. The employer is a duly-qualified self-insurer under the provisions of the Act.
4. The date of plaintiff's alleged injury by accident is October 13, 1994.
5. Plaintiff's average weekly wage is to be calculated from I.C. Form 22, which has been marked Stipulated Exhibit 1.
6. At the hearing before the Deputy Commissioner, the parties offered into evidence the following depositions: Paul Gregory Land; Robert Blake, MD; Kenneth E. Wood, MD, and Claude Luvis, MD.
* * * * * * * * * *
RULING ON EVIDENTIARY MATTERS
All objections made by the parties during the depositions submitted at the hearing have been ruled on in accordance with applicable law.
* * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. Plaintiff is 38 years of age. He attended school through the tenth grade and completed his GED. Plaintiff received additional education at a technical college, where he studied auto body mechanics, welding and body shop. He served three years in the military, where he received training as a forward observer. In the military, plaintiff learned to read maps, plot coordinates, and direct air strikes.
2. Prior to his employment with defendant-employer, plaintiff worked as a winder at PPG Industries, where he was dismissed for falsifying records. He worked as a pest control applicator and sales representative. In approximately 1989-90, he started his own lawn care and tree trimming business.
3. Plaintiff began employment with defendant-employer on March 5, 1984, as a production worker in the prepaint cab department. He performed a variety of jobs that required lifting and manual labor. In approximately 1986-87, plaintiff injured his low back at work lifting a trash can. He developed a severe stabbing pain in his left low back, which caused him to miss time from work. He experienced problems with his low back "off and on" after this incident.
4. On August 8, 1989, plaintiff sustained a further injury to his low back at work when he attempted to lift a sleeper box. He experienced a sharp stabbing pain in his low back in the same area he had injured previously. Following his injury in 1989, plaintiff experienced recurrent episodes of severe left low back pain. These episodes of pain could last two weeks or longer.
5. In the present case, plaintiff alleges that he sustained an injury by accident arising out of and in the course of his employment with the employer on October 13, 1994, when he experienced low back pain while assisting a fellow-employee who was having a diabetic reaction.
6. In November 1991, plaintiff consulted Dr. Claude Luvis for a problem with his "nerves." Dr. Luvis followed plaintiff regularly thereafter and treated him with Buspar, an anti-anxiety/anti-depressant medication. He took plaintiff out of work in August 1994 for treatment of depression. Plaintiff was scheduled to be on medical leave for his depression until October 5, 1994.
7. Plaintiff injured his low back at home on October 2, 1994, walking up his back steps. As he stepped on the third step with his left foot, his foot slipped outward. He fell but caught himself on the handrails. He heard a distinct "pop" in his left lower back in the same area he had injured previously. He experienced immediate pain in his low back so severe he could not move. Plaintiff stood holding tightly to the handrails on his steps for approximately ten minutes, unable to move because he was hurting so badly. He cried due to the severity of his injury. After he finally got inside the house, plaintiff's wife had to help him to bed because his pain was so severe.
8. Plaintiff consulted Dr. Luvis on October 3, 1994, complaining of pain in his low back and left side so severe it took his breath away. Dr. Luvis prescribed pain medications and heat/ice to control inflammation. Plaintiff returned on October 6, 1994 continuing to complain of pain in his left hip area. Dr. Luvis injected plaintiff with Kenalog to treat inflammation of his low back.
9. Plaintiff returned to work with the employer on October 10, 1994, after being out of work on medical leave since August 1994. On October 13, 1994, plaintiff went to the nurse's station to have a hair removed from his eye. While the nurse attended plaintiff, another employee entered the nursing station assisting a worker who was having a diabetic reaction. Plaintiff helped the other employee place the diabetic patient on an examining table. Plaintiff did not complain of hurting his back while assisting the patient. He did not report an injury of any type to the plant nurse, who was present the entire time. Plaintiff testified that, as he was walking to his work station, he noticed pain in his low back. In his deposition, plaintiff testified that he was experiencing low back pain prior to lifting the patient in question. This pain was located in the same area of his low back plaintiff had injured at home on October 2, 1994. Plaintiff's low back pain after lifting the patient at the nurse's station was no greater or worse than it had been before lifting the patient.
10. On October 13, 1994, plaintiff called Dr. Luvis' office requesting a refill on one of the medications he took for his nerves. He did not mention anything to Dr. Luvis' staff about being injured at work that day. Plaintiff saw Dr. Luvis on October 17, 1994. Plaintiff did not mention anything to Dr. Luvis about an injury at work, lifting a patient in the nurse's station, or any unusual event that caused a dramatic increase in his pain.
11. Dr. Luvis referred plaintiff to Dr. Robert Blake, an orthopedic surgeon, who saw him on October 20, 1994. Dr. Blake did not receive any of plaintiff's prior medical records. Following a clinical examination, Dr. Blake diagnosed plaintiff's condition as myofascial back pain, with possible spondylolysis, a pre-existing condition. Spondylolysis is a chronic condition that can cause pain. The etiology of the condition is uncertain. Plaintiff never informed Dr. Blake of his two previous back injuries or that he had continued to experience intermittent low back pain since 1989. Dr. Blake thought plaintiff's low back pain developed contemporaneously with the lifting incident at work on October 13, 1994. He did not realize plaintiff was experiencing low back pain before that incident or that plaintiff noticed his pain while walking to his work station. Dr. Blake acknowledged that the incident at plaintiff's home on October 2, 1994, could have caused the condition he diagnosed and treated. The opinions otherwise expressed by Dr. Blake regarding plaintiff's condition were based on an incomplete and inaccurate history. Dr. Blake treated plaintiff conservatively until December 12, 1994, when he referred him to Dr. Rhyne, a spine specialist.
12. Plaintiff saw Dr. Rhyne on December 9, 1994. Thereafter, he saw Dr. Rhyne's associate, Dr. Kenneth E. Wood, an orthopedic surgeon, on December 15, 1994. Dr. Wood did not obtain a medical history from plaintiff, and relied on the information plaintiff had given Dr. Rhyne. The records Dr. Wood relied upon indicated that plaintiff had experienced a dramatic onset of low back pain when assisting a patient at the employer's nursing station. This history was inaccurate based upon plaintiff's testimony that he did not experience low back pain while assisting the patient, but noticed pain while walking to his work site. On December 27, 1994, plaintiff reported to Dr. Wood that he had experienced progressive back pain for a number of years. Plaintiff did not report to Dr. Wood any of the severe symptoms he experienced following his injury at home on October 2, 1994, including a discernible pop in his back and severe debilitating pain.
13. Dr. Wood diagnosed plaintiff's condition as bilateral spondylolysis at L4, with traction spurs. Generally, spondylolysis occurs during childhood. The presence of traction spurs meant plaintiff's condition had been long-standing. Spondylolysis, when it develops, can cause pain without trauma. Plaintiff's history of progressive low back pain was consistent with symptomatic spondylolysis. Dr. Wood could not say what caused the condition he diagnosed and treated.
14. On February 9, 1995, plaintiff underwent a lumbar fusion performed by Dr. Wood. Plaintiff experienced excellent post-operative relief of his symptoms. X-rays obtained on June 15, 1995, revealed a solid fusion. In October 1995, Dr. Wood released plaintiff to return to work with restrictions.
15. Plaintiff had not recovered from his low back injury at home on October 2, 1994, prior to the alleged incident at work on October 13, 1994. On October 13, 1994, plaintiff continued to experience pain in his left low back area, from the injury he sustained at home on October 2, 1994, when he felt a pop in his back accompanied by severe pain. Plaintiff did not experience any change in the nature or severity of his pre-existing low back pain as a result of assisting the patient in the nurse's office on October 13, 1994.
16. A review of the totality of the evidence fails to sustain plaintiff's allegation of a back injury or aggravation of a previous injury on October 13, 1994. Rather, the greater weight of the evidence establishes that any low back pain plaintiff experienced on October 13, 1994 was a continuation of the injury he sustained at home on October 2, 1994, or the pre-existing progressive back pain he described to Dr. Wood.
17. Plaintiff failed to prove that he sustained a back injury or aggravation of a previous injury as a result of a specific traumatic incident of the work assigned on October 13, 1994 arising out of and in the course of his employment with the defendant.
* * * * * * * * * *
Based upon the findings of fact, the Full Commission makes the following additional
CONCLUSIONS OF LAW
1. Plaintiff did not sustain an injury by accident arising out of and in the course of his employment with the employer or sustain an injury resulting from a specific traumatic incident of his assigned work on October 13, 1994. N.C.G.S. § 97-2(6).
2. Plaintiff is therefore not entitled to benefits under the North Carolina Workers' Compensation Act. N.C.G.S. § 97-2 etseq.
* * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Plaintiff's claim under the Act must be, and the same hereby is, DENIED.
2. Defendants shall pay expert witness fees as previously approved by the Industrial Commission.
3. Each side shall pay its own costs.
IT IS FURTHER ORDERED that this matter be REMOVED from all hearing dockets.
 S/ _____________________ DOUGLAS E. BERGER DEPUTY COMMISSIONER
CONCURRING:
S/ _______________________ BERNADINE BALLANCE COMMISSIONER
S/ ________________________ DIANNE C. SELLERS COMMISSIONER
DEB:sm